IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEX MELENDEZ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 11-6632 |
| v. | : | |
| | : | CRIMINAL ACTION |
| UNITED STATES OF AMERICA, | : | NO. 05-44-7 |
| Defendant. | : | |

PRATTER, J.                                                      SEPTEMBER 5, 2013

## MEMORANDUM

A jury found Alex Melendez guilty of conspiracy to participate in the affairs of a racketeering enterprise, a conspiracy to distribute 1,000 grams or more of heroin within 1,000 feet of a school, a conspiracy to kidnap in aid of racketeering, a conspiracy to commit murder in aid of racketeering, and using a firearm during and in relation to violent crimes. Having been sentenced, Mr. Melendez has now filed a *pro se habeas corpus* motion to vacate, set aside, or correct his sentence pursuant to 18 U.S.C. § 2255. The Government opposes the motion, arguing that Mr. Melendez has failed to raise any meritorious grounds for relief. Mr. Melendez replied to the Government's response.

After careful consideration of Mr. Melendez's § 2255 motion (Doc. No. 939), the Government's Response in Opposition (Doc. No. 961), and Mr. Melendez's Reply (Doc. No. 966), for the reasons discussed below, Mr. Melendez's motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 26, 2005, a grand jury charged Mr. Melendez, along with 16 co-defendants, via a 26-count indictment, with committing violent crimes relating to their alleged membership in the nationwide criminal enterprise the Almighty Latin King and Queen Nation ("ALKQN"),

1

also known as the "Latin Kings." Mr. Melendez was named in eight of the counts. Count 1 charged Mr. Melendez with conspiring to participate in the affairs of a racketeering enterprise, that is, a RICO conspiracy. Count 7 charged Mr. Melendez with conspiracy to distribute 1,000 grams or more of heroin within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 860. Counts 9 and 11 charged Mr. Melendez with kidnapping fellow Latin King Nicholas Vasquez and Latin Queen Nilsa Rivera, in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). Count 10 charged Mr. Melendez with conspiracy to commit kidnapping New Jersey Latin King Billy Guzman, in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Count 12 charged Mr. Melendez with conspiracy to maim Mr. Guzman in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6). Count 13 charged Mr. Melendez with conspiring to murder Mr. Guzman in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Finally, Count 14 charged Mr. Melendez with using and carrying a firearm during and in relation to the conspiracy to murder Mr. Guzman, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2).

On March 15, 2006, a jury found Mr. Melendez guilty of the RICO conspiracy (Count 1), conspiracy to distribute 1,000 grams or more of heroin within 1,000 feet of a school (Count 7), conspiracy to kidnap in aid of racketeering (Count 11), conspiracy to murder in aid of racketeering (Count 13), and using a firearm during and in relation to violent crimes (Count 14). Mr. Melendez was acquitted of conspiracy to maim (Count 12). The jury did not enter a verdict as to Counts 9 and 10, resulting in a mistrial on those charges, which the Government declined to retry. *See* Docket No. 552.

On July 20, 2006, the Court imposed concurrent sentences of 360 months imprisonment on Counts 1 and 11, 300 months on Count 7, and 120 months on Count 13. The Court also imposed a mandatory consecutive sentence of 84 months on Count 14. In the aggregate, Mr.

Melendez was sentenced to 444 months imprisonment. Mr. Melendez was also sentenced to a ten-year period of supervised release, a $2,500 fine, and a $400 special assessment. Docket Nos. 674, 678.

Mr. Melendez appealed his conviction and sentence, arguing that the district court erred in: (1) denying his motion claiming that the Government had engaged in discrimination during jury selection in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) denying his motion to dismiss under Federal Rule of Criminal Procedure 29 for insufficient evidence as to the RICO conspiracy (Count 1); (3) denying his Rule 29 motion as to the charged heroin conspiracy (Count 7); (4) denying his Rule 29 motion as to the charged murder conspiracy (Count 13); (5) denying his motion for severance; (6) denying his motion for a bill of particulars; (7) denying his motion to suppress the photo identification; (8) denying his motion for mistrial based on alleged juror misconduct; and (9) sentencing him to an allegedly unreasonable sentence. On August 3, 2010, the Court of Appeals for the Third Circuit upheld Mr. Melendez's conviction and sentence. *United States v. Melendez*, 388 Fed. Appx. 178, 181-82 (3d Cir. 2010).

Mr. Melendez then filed a *pro se* petition for a writ of *habeas corpus*. In this petition, Mr. Melendez alleges that he merits relief pursuant to 28 U.S.C. § 2255 on seven grounds. Mr. Melendez claims that his attorney was ineffective for, *inter alia*, (1) not moving to dismiss the indictment against him based on an alleged violation of the Speedy Trial Act; (2) not sharing certain sentencing documents with Mr. Melendez prior to his sentencing; (3) failing to petition the Supreme Court for a writ of *certiorari*; and (4) failing to challenge Mr. Melendez's "career offender" designation in connection with his sentencing. Mr. Melendez also claims that the Court erred in not providing him new counsel and imposing a sentence when Mr. Melendez claims to have been unprepared for sentencing. Finally, Mr. Melendez claims that the combined

alleged errors of counsel and of the Court resulted in denying Mr. Melendez due process of law and a fair trial and sentencing.

**LEGAL STANDARDS**

Section 2255 allows a prisoner in custody to attack his sentence if it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thus, a petitioner may only prevail on a Section 2255 *habeas* claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure ." *Hill v. United States,* 368 U.S. 424, 428 (1962).

Mr. Melendez has filed his § 2255 petition *pro se*. *Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, Mr. Melendez's *pro se* habeas petition is construed liberally. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). Nonetheless, the petition must meet certain standards, all as discussed below.

**DISCUSSION**

    **A. Merits**

Amid his seven challenges, Mr. Melendez asserts three principal arguments in his § 2255 petition: (1) ineffective assistance of counsel at trial and at sentencing; (2) errors of the Court with respect to appointment of counsel and sentencing; and (3) violation of his right to due process of law and to a fair trial and sentencing as a result of the combined errors of his counsel and of the Court. The Court will discuss each of these arguments in turn.

*1. Ineffective Assistance*

Mr. Melendez alleges various errors by his counsel. These ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-pronged test under *Strickland*. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Id.* Judicial scrutiny of counsel's performance must be "highly deferential" and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In determining whether assistance of counsel has been ineffective, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

If a defendant fails to satisfy one prong of the *Strickland* test, a court need not consider the other prong. *Id.* at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* For the following reasons, Mr. Melendez has failed to satisfy his burden under *Strickland* to show that his counsel was ineffective. Accordingly, the Court will not also discuss in depth the *Strickland* prejudice element.

First, Mr. Melendez contends that his counsel was ineffective for failing to allege a violation of the Speedy Trial Act at trial, based on the delay between the time of his arraignment and the commencement of his trial. The Speedy Trial Act ("the Act") requires that a criminal trial commence "within seventy days of the filing date . . . of the . . . indictment, or from the date

the defendant has appeared before a judicial officer of the court in which such charge is pending," whichever is later. 18 U.S.C. § 3161(c)(1). However, the Act provides for a number of "excludable days" in computing the time within which a trial must commence. 18 U.S.C. § 3161(h). For example, in determining whether to delay the commencement of trial, a court may consider whether the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(8)(B)(ii).

Here, Mr. Melendez was indicted on January 26, 2005, Doc. No. 1, and arraigned on March 2, 2005, Doc. No. 176. On March 3, 2005, the Government moved for designation of the case as "complex" under the Speedy Trial Act, based on, *inter alia*, the number of counts in the indictment (26), the number of defendants (17), the time period covered in the indictment (from March 1999 to January 26, 2005), the multiple searches and seizures, the variety of physical and testimonial evidence, and the existence of electronic surveillance. Doc. No. 182. The Government noted in its motion that counsel for the majority of the Defendants, including counsel for Mr. Melendez, made no objection to the designation.

On March 7, 2005, the Court issued an order designating the case as "complex" pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii). Doc. No. 190. Therefore, although Mr. Melendez's trial began on January 8, 2006, 312 days after his arraignment, the timing of the commencement of his trial was excused under the Act because the case was designated "complex." Accordingly, Mr. Melendez has failed to establish ineffective assistance of counsel based on his counsel's failure to raise the issue of a Speedy Trial Act violation, given that no such violation occurred. Moreover, even if it had been error for the Court to designate the case as complex, the time

required by the many motions pending throughout the period between Mr. Melendez's arraignment and trial produced sufficient excludable time to keep the supposed delay within the confines of the Speedy Trial Act deadlines.

Although Mr. Melendez's use of topical headings in his position papers suggests that he is only alleging a Speedy Trial Act violation, the substance of his arguments also suggests that he is attacking his counsel's failure to object to the delay on Sixth Amendment grounds. This attack likewise must fail. To determine whether a delay in trial violates the Sixth Amendment, a court must examine four factors: (1) the length of the delay, (2) the reason for the delay, (3), the defendant's assertion of his right to a speedy trial, and (4) the extent of prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). Assuming the length of delay in this case is sufficient to trigger a *Barker* analysis, *see Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992) (delay approaching a year in length triggers *Barker* analysis), an application of the *Barker* factors to this case reveals that Mr. Melendez's attorney was not ineffective for failing to raise a Sixth Amendment challenge.

As to length of the delay, the Supreme Court has recognized that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531. Here, Mr. Melendez was charged in just such a serious, complex conspiracy, involving 17 defendants and a 26-count indictment covering a lengthy investigation with many searches and seizures resulting in a myriad of types of evidence. Indeed, the trial itself lasted for 44 days. Thus, the delay of less than a year between arraignment and trial does not weigh in Mr. Melendez's favor in light of the complexity and seriousness of the conspiracy as charged. Similarly, the reason for the delay in Mr. Melendez's case was this very complexity, coupled with a host of pretrial motions regarding everything from severance to

7

suppression filed by Mr. Melendez and his codefendants, and to which the Court gave due consideration. As to no aspect of these issues does Mr. Melendez state how his lawyer's handling of the issues fell below a standard of care employed by capable counsel.

Finally, although Mr. Melendez claims to have been prejudiced by the delay as would be required for the *Barker* analysis, he has not actually specified exactly how he was prejudiced. His only stated claim, namely, that the lapse of time may have affected the eyewitness testimony of Mr. Guzman relating to his identification of Mr. Melendez, is purely speculative. Certainly, the delay in this case was not long enough to rise to the level of presumptive prejudice. *See U.S. v. Battis*, 589 F.3d 673, 683 (3d Cir. 2009) ("Although we have had few occasions to consider what period of time is sufficient to find presumptive prejudice, we have determined that a fourteen-month period between arrest and trial is insufficient."). Therefore, to the extent Mr. Melendez argues that his counsel was ineffective for not raising a Sixth Amendment challenge with respect to the delay in going to trial on the charges against him, Mr. Melendez is not entitled to *habeas* relief.

Next, Mr. Melendez claims that his counsel was ineffective for failing to deliver to him the sentencing memoranda of his counsel and of the Government, or the revised addendum to the pre-sentence investigation report ("PSI"), prior to his sentencing, and for failing to raise these errors on appeal. He also claims that the Court erred in going forward with sentencing knowing he, Mr. Melendez, had not reviewed these documents. Mr. Melendez raises these claims under Federal Rule of Criminal Procedure 32(i)(1), which provides that the Court:

> (A) must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;
>
> (B) must give to the defendant and an attorney for the government a written summary of---or summarize in camera--any information excluded from the presentence report under

> Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;
>
> (C) must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and
>
> (D) may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

Rule 32 does not specifically require providing in hard copy the sentencing memoranda or otherwise giving the defendant the Government's memorandum. Mr. Melendez's contends that these documents are part of the "other matters relating to an appropriate sentence" mentioned in Rule 32(i)(1)(C), and that, as such, he was entitled to review them. Rule 32(i)(1)(C), however, does not deal with which individual documents must be provided to defendants, but rather what topics the parties' attorneys must be permitted to comment on. Mr. Melendez does not, and, indeed, cannot, argue that his attorney was not provided with an opportunity to comment on the probation officer's determinations and other matters. His attorney filed several objections and a thorough sentencing memorandum on Mr. Melendez's behalf, and throughout Mr. Melendez's three-hour sentencing hearing, he and his attorney were given ample opportunity to comment on issues relevant to sentencing. For example, the Court catalogued all of Mr. Melendez's objections to the presentence investigation report, confirmed that the catalogued objections covered all of Mr. Melendez's objections, and allowed Mr. Melendez's counsel to address each objection individually. *See* 7/20/06 Tr. at 16:20-50:10. Mr. Melendez's counsel later made an impassioned plea for a lower offense level and a lesser sentence, *see id.* at 61:11-71:23, and Mr. Melendez himself spoke at length about why he should be sentenced more lightly, *see id.* at 72:12-76:14.

As to the revised addendum to the presentence report, the record is unclear as to whether Mr. Melendez received this document or not. Giving him the benefit of the doubt and assuming he did not receive it, Mr. Melendez does nothing to explain how this omission prejudiced him at sentencing. Indeed, the revised addendum consisted largely of a catalogue of Mr. Melendez's objections to the presentence report and the probation office's responses. It did not add new information that Mr. Melendez would have needed the opportunity to rebut. Nothing new or otherwise not previously known by Mr. Melendez was presented to the Court in the revised addendum. Mr. Melendez had sufficient opportunity to object, both in response to the presentence report and at sentencing, and, in fact, did lodge several objections to the original presentence report and the probation officer's submissions. Thus, assuming the failure of counsel or the Court to give Mr. Melendez a separate opportunity to review the revised addendum prior to the sentencing hearing was, in fact, an error, it was a harmless one, given that Mr. Melendez had unfettered opportunity to make his arguments prior to sentence being imposed.

Instead of specifying how he was prejudiced by his alleged lack of access to the revised addendum, Mr. Melendez argues that the error was "structural," and that he is therefore automatically entitled to *habeas* relief. Structural errors are those that "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States,* 527 U.S. 1, 9 (1999) (emphasis deleted). Structural errors "defy analysis by 'harmless-error' standards by affecting the entire adjudicatory framework." *Puckett v. U.S.*, 556 U.S. 129, 141 (2009) (internal citations omitted). Mr. Melendez points to no case law in which a court held that a failure to provide a criminal defendant with a presentence report addendum amounted to a structural error. Indeed, in *United States v. Reynoso*, 254 F.3d 467,

475 n.5 (3d Cir. 2001), the Third Circuit Court of Appeals found that a violation of a defendant's right to advance notice of the information upon which he or she is to be sentenced does not create a structural error. Therefore, this argument, too, is unavailing to Mr. Melendez here.

Mr. Melendez also alleges that his counsel was ineffective for failing to petition the Supreme Court for a writ of *certiorari*. Specifically, Mr. Melendez contends that his counsel had a duty to consult with him about whether to appeal the decision of the Court of Appeals for the Third Circuit to the Supreme Court. Mr. Melendez argues that his counsel violated this duty to consult with him when he withdrew from representing Mr. Melendez on August 25, 2010, the date that the Court of Appeals for the Third Circuit issued the decision in his case. Mr. Melendez further alleges that his counsel never consulted with him about whether or not to seek a writ of *certiorari* despite the fact that he had informed his counsel that he wanted to pursue all available alternatives in his case.

The Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (1999), held that counsel has a constitutionally imposed duty to consult with his client on whether to file an appeal only when there is reason to think either (1) that a rational defendant would want to appeal; or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Mr. Melendez contends that *Roe* affords him the right to consult with counsel about whether to file a petition for writ of *certiorari*. However, in articulating this duty of counsel, the Court in *Roe* referred to consultations about whether to appeal directly from a conviction, *not* whether to seek discretionary review by the United States Supreme Court. *See United States v. Becker*, No. 01-cr-156, 2005 U.S. Dist. LEXIS 44776, at *16-22 (S.D.N.Y. Nov. 18, 2005) ("Because of the discretionary nature of the Supreme Court's jurisdiction, there is no right to counsel in seeking a writ of certiorari . . . ."). Accordingly, contrary to Mr. Melendez's interpretation, *Roe* imposes

11

no duty on counsel to consult with his client on whether to seek discretionary review by the United States Supreme Court.

Moreover, even if his counsel disregarded a duty to consult with Mr. Melendez concerning whether to file a petition for writ of *certiorari*, Mr. Melendez has failed to show that he suffered prejudice by this alleged error. There is no basis to believe that the Supreme Court would have exercised its discretion to review the Court of Appeals decision, given that all of Mr. Melendez's points of error were either summarily dismissed or determined "meritless" after a brief discussion by the Third Circuit Court of Appeals. *See United States v. Melendez*, 388 Fed. Appx. at 180-81.

In his final challenge of his counsel's effectiveness, Mr. Melendez contends that counsel erred when he failed to challenge the "career offender" status at sentencing. First, counsel *did* challenge his "career offender" status. *See* 7/20/06 Tr. at 39:16-50:10. And, given Mr. Melendez's criminal history, which includes at least one prior "controlled substance" offense and at least one prior "crime of violence, he was correctly deemed a "career offender" under the Sentencing Guidelines, despite his arguments to the contrary. *See* U.S.S.G. § 4B1.1(a). Thus, even if his counsel had not challenged his "career offender" status, a failure to make such a challenge would not have been prejudicial to Mr. Melendez because the designation was appropriate.

### 2. *Errors of the Court*

Mr. Melendez also alleges various errors of the Court during his trial and sentencing. As noted above, he claims that the Court erred in proceeding with sentencing when it was apparent that he had not read all of the sentencing materials filed in his case prior to the sentencing

hearing. The Court has addressed this so-called circumstance above and will not reiterate that discussion here.

Next, Mr. Melendez contends that the Court erred in failing to appoint new counsel for him. As Mr. Melendez correctly notes, when a criminal defendant requests new counsel, the Court is obligated to at least inquire about the reasons for his request if they are not fully set forth in the request itself. *See United States v. Welty*, 674 F.2d 185, 187-188 (3d Cir. 1982) ("When a defendant requests a substitution of counsel on the eve of trial, the district court must engage in at least some inquiry as to the reason for the defendant's dissatisfaction with his existing attorney.") The Court is not required to appoint new counsel, however, unless the defendant can "show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." *Id.* Moreover, a "unilateral decision not to cooperate with court-appointed counsel does not constitute good cause." *United States v. Gibbs,* 190 F.3d 188, 207 n. 10 (3d Cir. 1999) (citation omitted).

Mr. Melendez initially requested new counsel prior to trial. The Court held a hearing with regard to the request, at which time Mr. Melendez actually stated that he was satisfied with counsel. *See* Doc. No. 281. Thus, this request was properly disposed of before trial.

Mr. Melendez's next request for new counsel came just before his sentencing. The very first issue of substance addressed at the sentencing hearing was Mr. Melendez's complaint regarding his counsel. The Court allowed Mr. Melendez to fully articulate his issues with counsel, which primarily consisted of vague complaints that his counsel was not "right for [his] intentions." *See* 7/20/06 Tr. at 8:12-13. He agreed that counsel had gone over the presentence investigation report with him, and that counsel had filed a number of objections using

information he provided. After allowing Mr. Melendez to voice all of his complaints concerning counsel, none of which directly related to sentencing, the Court determined that his objections did not rise to the level of an irreconcilable conflict or complete breakdown in communication that would have led the Court to continue the sentencing hearing and arrange for substitute counsel.

In the fall of 2006, Mr. Melendez again requested new counsel, and he filed a motion to that end. However, the motion was filed after he had already appealed his conviction. The Court denied the motion without prejudice, so that Mr. Melendez could file the motion with the Third Circuit Court of Appeals.

Because the Court responded to each of Mr. Melendez's requests for new counsel appropriately, by allowing Mr. Melendez to fully articulate his dissatisfaction and ruling on each request taking into account all relevant considerations, and recognizing that counsel was a skilled and diligent professional working painstakingly on behalf of Mr. Melendez, the Court's decision not to appoint new counsel was not error.

### 3. *Due Process Violation*

Finally, Mr. Melendez contends that the combined alleged errors of his counsel and of the Court resulted in a deprivation of due process and of a fair trial and sentencing. Because the Court has determined that none of these alleged errors is meritorious, Mr. Melendez has failed to show that his rights of due process and to a fair trial and sentencing were violated by the alleged errors either individually or in combination.

### B. Hearing

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motions, files and records of the case show

conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Although the baseline the movant must meet to secure an evidentiary hearing is admittedly low, *Booth*, 432 F. 3d at 546, it is clear from the files and records of the case that Mr. Melendez is entitled to no relief, and so he is not entitled to a hearing in this case.

### C. Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination regarding whether a certificate should issue. Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that Mr. Melendez has not exhibited a substantial denial of a constitutional right. A certificate will therefore not issue.

**CONCLUSION**

For the reasons discussed above, Mr. Melendez's § 2255 petition will be denied, and a Certificate of Appealability will not issue. An appropriate order follows.

BY THE COURT:

  /s/  Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge